**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ASA ACCUGRADE, INC., ALAN HAGER,
DIANE HAGER,**

          **Plaintiffs,**

**-vs-**                                        **Case No. 6:05-cv-1285-Orl-19DAB**

**AMERICAN NUMISMATIC ASSOCIATION,
HERITAGE CAPITAL CORPORATION,
COLLECTORS UNIVERSE, INC., BARRY
STUPPLER & CO., INC., NU GRADE, LLC,
PROFESSIONAL NUMISMATISTS GUILD,
INC.,**

          **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT AMERICAN NUMISMATIC ASSOCIATION'S AMENDED MOTION TO DISMISS [SECOND AMENDED] COMPLAINT (Doc. No. 18)** |
| **FILED:** | **September 20, 2005** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |
| **MOTION:** | **DEFENDANT PROFESSIONAL NUMISMATISTS GUILD, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (Doc. No. 43)** |
| **FILED:** | **October 11, 2005** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

| | |
|---|---|
| **MOTION:** | **DEFENDANT BARRY STUPPLER & CO., INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Doc. No. 45)** |
| **FILED:** | **October 21, 2005** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |
| **MOTION:** | **DEFENDANT, COLLECTORS UNIVERSE, INC.'S, AMENDED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 51)** |
| **FILED:** | **October 27, 2005** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

Plaintiffs sued Defendants in state court alleging the state torts of trade slander and tortious interference with business relationships, as well as state anti-trust claims under Florida Statute § 542.18. All Defendants seek dismissal of the claims against them for failure to state a claim upon which relief can be granted. Two Defendants seek dismissal of claims against them for lack of personal jurisdiction and Defendant ANA also seeks dismissal for improper venue. For the reasons that follow, the Court finds that personal jurisdiction and venue are proper for all Defendants, Plaintiffs' antitrust claims should be dismissed, and their tort claims survive the motions to dismiss.

## *I. MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND VENUE*

The burden of establishing jurisdiction over a nonresident defendant lies with the plaintiff. *Black v. Bryant,* 905 F.Supp. 1046, 1051 (M.D. Fla. 1995) (citing *Morris v. SSE, Inc.,* 843 F.2d 489 (11th Cir.1988)). A plaintiff in a diversity action may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state statute; it is not necessary to plead the supporting facts. FLA.R.CIV.P. 1.070(I); *Id.* (citing *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla. 1989)). However, the defendant may defeat the assertion of

jurisdiction by proving facts inconsistent with or contrary to the statutory basis. *Id.* (citing *Core Industries, Inc. v. Agostinelli,* 591 So.2d 207 (Fla. 4th DCA 1991)). "Only after a defendant raises a meritorious challenge to the jurisdiction of the court by the use of affidavits, documents or testimony, does the burden shift back to the plaintiff to prove jurisdiction through affidavits, testimony or documents." *Id.* (citing *Jet Charter Service, Inc. v. Koeck,* 907 F.2d 1110, 1111 (11th Cir. 1990) and *Sims v. Sutton,* 451 So.2d 931 (Fla. 3d DCA 1984)). Once the burden shifts back to the plaintiff, "the non-moving party may not rest merely upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974).

In ruling on the motion to dismiss, the Court must accept the facts alleged in plaintiff's complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* If the plaintiff's complaint and the defendant's affidavits conflict, the Court is required to view the complaint in the light most favorable to the plaintiff. *Id.* (citing *Scheuer v. Rhodes,* 416 U.S. 232 (1974)).

In order to determine whether the Court may exercise personal jurisdiction over a nonresident defendant, the Court must determine whether the state long-arm statute permits assertion of jurisdiction; and whether sufficient minimum contacts exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under *International Shoe Co. v. Washington,* 326 U.S. 310, 366 (1945). *See Structural Panels v. Texas Aluminum Industries*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993).

### 1. *Long-arm Statute*

As Plaintiffs' claims are state law claims, before the Court on the basis of diversity jurisdiction, the Court looks to Florida's long-arm statute. Florida Statute § 48.193 provides:

1. Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts . . .
    b) Committing a tortious act within this state. . . .
    f) Causing injury to persons. . . within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . :
        1. The defendant was engaged in solicitation or service activities within this state; . . .
    g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
2. A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

### *2. Minimum Contacts*

The Court must also determine whether the assertion of jurisdiction over Defendants survives the due process test. The Court must determine whether the moving Defendants have met the minimum contacts requirement by determining whether the exercise of personal jurisdiction over them would transgress traditional notions of fair play and substantial justice. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 858 (11th Cir. 1990). In making this determination, the Court considers the contacts in light of these factors: 1) the burden on the defendant in defending the lawsuit; 2) Florida's interest in adjudicating the dispute; 3) Plaintiffs' interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering fundamental substantive social policies. *Cronin v. Washington National Ins. Co.,* 980 F. 2d 663, 671 (11th Cir. 1993).

### *3. Venue Requirements*

When federal jurisdiction is founded on diversity of citizenship, the question of venue is governed by 28 U.S.C. § 1391(a), which requires that venue be in the district where a substantial part of the events or omissions occurred or where any defendant is subject to personal jurisdiction at the time the action is commenced if there is no district in which the action may be otherwise be brought[1].

**ANA and Barry Stuppler & Co., Inc. –** ANA contends that Plaintiffs' Second Amended Complaint fails to adequately allege venue and *in personam* jurisdiction over the ANA. ANA contends that Plaintiffs' personal jurisdiction allegations fail to allege any tort committed by ANA (acting through agents or employees) in Florida or that ANA has any other minimum contacts with the state. Plaintiffs respond that ANA has availed itself of the privilege of conducting activities in this forum and should have anticipated the possibility of being haled into court in Florida.

Plaintiffs allege in the Second Amended Complaint that ANA is a not-for-profit numismatic association for coin collectors with hundreds of members in Florida[2], which sanctions trade shows and conventions in Florida. Doc. No. 5 ¶ 13. Plaintiffs allege that ANA acts as a quasi-governmental body over numismatic collectors and dealers, wields great influence in the industry, and provides a forum for resolving complaints against members or disputes between members. Doc. No. 5 ¶ 7. Plaintiffs also allege that ANA accepted for publication and published in its monthly magazine "The Numismatist," a false and disparaging "advertisement" authored by Barry Stuppler that was disseminated to ANA members throughout Florida. Doc. No. 5 ¶ 23. Plaintiffs allege that Stuppler does business in the State of Florida and that Barry Stuppler acted as an agent of the ANA and the Professional Numismatists Guild, Inc. Doc. No. 5 ¶ 8.

---

[1]The third option, that venue may lie in a district where any defendant resides if all defendants reside in the same state is not applicable in this case.

[2]For example, Plaintiff Diane Hager was a member of the ANA until April 2003.

As Plaintiffs correctly point out, Stuppler has not filed any affidavits or other evidence to challenge the sufficiency of the allegations which would bring the corporation within the personal jurisdiction of the Court. Although ANA did file the affidavit of Christopher Cipoletti, its executive director, in support of the Motion to Dismiss, the affidavit fails to contradict or even mention the pertinent allegations establishing personal jurisdiction. Doc. No. 59-2.

For instance, Plaintiffs allege Stuppler authored a false and disparaging advertisement that the ANA accepted for publication and published in its monthly magazine "The Numismatist," which the ANA then disseminated to its members throughout Florida. Doc. No. 5 ¶ 23. Publication of a false and disparaging advertisement is a tort, bringing both Defendants ANA and Stuppler within the Court's jurisdiction pursuant to Florida Statute § 48.193(1)(b). Cipoletti's affidavit did not contradict or quantify the size of its membership in Florida or the circulation of its magazine, "The Numismatist." *See Rodriguez Salgado v. Les Nouvelles Esthetiques,* 218 F. Supp. 2d 203 (D. Puerto Rico 2002) (federal court lacked personal jurisdiction over publisher of monthly trade magazine where disputed advertisement appeared in magazine with only 20 Puerto Rican subscribers) *and cases cited therein*.

In response to Defendants' challenge to personal jurisdiction, Plaintiffs provided the affidavit of Diane Hager, who states that ANA has thousands of members in Florida and mails its monthly magazine, "The Numismatist" to its Florida members. Doc. No. 72-1 ¶ 6. Diane Hager also states that Barry Stuppler published defamatory statements about the Plaintiffs at the American Numismatic Association Spring 2002 Convention in Jacksonville, Florida. Doc. No. 72-1 ¶ 5. She further states that the American Numismatic Association conducted conventions in Florida in 1967, 1974, 1992, 2000, 2002; during the conventions, ANA contracted with licensed Florida auctioneers to run the auctions. Doc. No. 72-1 ¶¶ 3-4, Ex. A. Diane Hager also states that Stuppler has been doing business

in Florida for over twenty years; Barry Stuppler (principal of Stuppler & Co., Inc.) is a member of the Florida United Numismatists and has attended many rare coin trade shows in Florida. Doc. No. 72-1 ¶ 3.

The Court finds the exercise of personal jurisdiction over ANA and Stuppler to be appropriate and not in violation of traditional notions of fair play and substantial justice. The burden on Defendants in litigating the suit here appears to be no more than the burden on Plaintiffs to litigate in California or Colorado. Moreover, Florida has a strong interest in adjudicating disputes involving its residents and those who slander its residents. Stuppler, having purposely availed itself of the privilege of advertising to Florida residents in "The Numismatist" should have reasonably anticipated that it could be sued with respect to the advertisement here. Given the distribution of "The Numismatist" to ANA members residing in Florida, the ANA should also have reasonably anticipated that it could be sued with respect to a false or disparaging advertisement in a magazine it sends to members who are residents here. *See Phillips v. Dale*, 1987 WL 12867, *1 (E.D. Pa. June 23, 1987) (if the defendant did foresee or should have foreseen that the statements he made would be published in the forum state, court could find that the minimum contacts requirement is satisfied). Neither of the moving Defendants has identified any factor which tips the scales in its favor. The Court respectfully recommends a finding that this Court has personal jurisdiction over Defendants ANA and Stuppler with respect to this action.

ANA also challenged venue in the Middle District of Florida, albeit in vague terms. Venue is proper if a substantial part of the events or omissions occurred in the Middle District or if one of the Defendants is subject to personal jurisdiction, if there is no district in which the action may otherwise have been brought. 28 U.S.C. § 1391(a). The Court finds venue in the Middle District to be proper because, as Plaintiff has alleged, the false and disparaging "advertisement" was

disseminated to Florida citizens, including those who reside in Seminole County, Florida (or are headquartered there) and other Florida residents within this Court's jurisdiction. *See* Doc. No. 5 ¶18-25.

## *II. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM*

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). In seeking dismissal for failure to state a viable claim, a defendant thus bears the "very high burden" of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief. *Id.* The Court is also limited to examining the four corners of the complaint. *Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D. Fla. 1995).

Plaintiffs allege four counts: conspiracy in restraint of trade, Florida Statute § 542.16 (Count 1); common law defamation (Count Three); tortious interference with advantageous business relationships (Count Four); and conspiracy to commit defamation and tortiously interfere with advantageous business relationships (Count Two). Defendants ANA, Stuppler, Professional Numismatists Guild, Inc. ("PNG"), and Collectors Universe, Inc. ("Collectors") move to dismiss Plaintiffs' claims against them for failure to state a claim upon which relief can be granted[3]. It is undisputed that Collectors Universe is the only direct competitor of Plaintiff Accugrade in the rare coin grading, certification and authentication business. Doc. No. 5 ¶¶ 2, 5. ANA is a federally chartered not-for-profit entity that acts as a quasi-governmental body over numismatic collectors and

---

[3]Heritage Capital Corporation has not filed a responsive pleading and Plaintiffs have not filed proof of service nor sought an entry of default against this Defendant.

-8-

dealers. Doc. No. 5 ¶ 7. Defendant Stuppler is a coin dealer. Doc. No. 5 ¶ 8. PNG is an organization of rare coin dealers. Doc. No. 5 ¶ 9.

### *1. Florida Antitrust Claim*

Defendants move to dismiss Count I of Plaintiffs' Second Amended Complaint for failure to state a claim under the Florida Antitrust Act. Florida Statute § 542.18. Doc. No. 5 ¶ 27. Section 542.18 provides that "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." The section is patterned after section 1 of the Sherman Antitrust Act, and has as its purpose "to complement the body of federal law prohibiting restraints of trade or commerce in order to foster effective competition." FLA. STAT. § 542.16; *Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc.,* 629 So.2d 252, 256 (Fla. 3rd DCA 1993) (citing *Hackett v. Metropolitan General Hosp.,* 422 So.2d 986, 986 (Fla. 2d DCA 1982); *All Care Nursing Service, Inc. v. High Tech Staffing Services, Inc*., 135 F.3d 740, 745 n.12 (11th Cir. 1998).

To state a claim for restraint of trade, a plaintiff must allege: (1) the existence of a specifically defined market in which the defendant participates; (2) the defendant had the ability to affect price or output; and (3) that plaintiff's exclusion from the market affected (or was intended to affect) the price or supply of goods in the market. *See Parts Depot v. Florida Auto Supply, Inc.*, 669 So.2d 321, 326 (4th DCA 1996); *Greenberg v. Mt. Sinai Medical Center*, 629 So.2d 252, 256 (Fla. 3rd DCA 1993); *Tampa Bay Storm, Inc. v. Arena Football League, Inc.,* Case No. 96-29-Civ-T-17C, 1998 WL 182418, *5 (M.D. Fla. March 19, 1998).

However, it is not enough to allege that plaintiffs were injured; there must be an allegation of harm to competition in general. *Manufacturing Research Corp. v. Greenlee Tool Co.,* 693 F.2d 1037, 1043 (11th Cir. 1982). "Antitrust laws are for the protection of competition, not primarily for the

protection of individual competitors." *St. Petersburg Yacht Charters v. Morgan Yacht, Inc.,* 457 So.2d 1028, 1047 (Fla. 2d DCA 1984).

Plaintiffs allege that the Defendants engaged in a collective refusal to deal or group boycott, which Plaintiffs contend, is a *per se* violation of the Florida Antitrust Act. Doc. No. 5 ¶ 30; Doc. No. 48 at 8 (citing *Summit Health Ltd. v. Pinhaus,* 500 U.S. 322, 325 (1991)). A *per se* violation is one which requires no proof of anti-competitive effect and is limited to practices which are presumed to affect the market such as price-fixing, group boycotts, and customer allocations. *All Care Nursing Services, Inc. v. High Tech Staffing Services, Inc.*, 135 F.3d 740, 746 (11th Cir. 1998); *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So.2d 1028, 1040 (Fla. 2d DCA 1984).

The fundamental reason that group boycotts, or concerted refusals by merchants to deal with other merchants, have long been held to be forbidden by the antitrust laws is that they restrict the ability of merchants to freely participate in the market, and therefore have "a monopolistic tendency." *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 211-213 (1959) (quoting *Standard Oil Co. v. United States,* 221 U.S. 1, 57, 61(1911)); *Belcher Oil Co. v. Florida Fuels, Inc.*, 749 F.Supp. 1104, 1109 (S.D. Fla. 1990). The particular anticompetitive effects that the antitrust laws' prohibition on group boycotts are intended to prevent are the denial of market access and "relationships. . . competitors need in the competitive struggle," *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 294 (1985) (quoting L. Sullivan, *Law of Antitrust* 261-62 (1977)). In a conventional boycott, actors at one level seek to protect themselves from competition from non-group members who do business or wish to do business at their level by taking concerted action aimed at depriving the excluded competitors of some necessary trade relationship. *Alabama Sportservice, Inc., v. National Horsemen's Benev. & Protective Ass'n, Inc.,* 767 F.Supp. 1573, 1580-1581 (M.D. Fla. 1991) (citing Sullivan, *Handbook of the Law of Antitrust* at 230 (1977)). Typically,

they combine to induce one or more suppliers who value the conspirators patronage,to cut off the target. The act is deemed *per se* violative of the Sherman Act. *Alabama Sportservice*, 767 F.Supp. 1581 (citing *Fashion Originators Guild of America v. FTC*, 312 U.S. 457 (1941)).

However, the jurisprudence of the Supreme Court and of the Eleventh Circuit from the last decade caution against "haphazard expansion of the 'group boycott label' and the concomitant imposition of *per se* liability." *Retina Associates, P.A. v. Southern Baptist Hosp. of Florida, Inc.*, 105 F.3d 1376, 1381 (11th Cir. 1997) (citing *FTC v. Indiana Fed'n of Dentists,* 476 U.S. 447, 458 1986)); *Consultants & Designers, Inc. v. Butler Serv. Group, Inc.,* 720 F.2d 1553, 1561 (11th Cir.1983)). "'[T]he *per se* approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor.'" *Retina Associates*, 105 F.3d at 1381 (quoting *Indiana Fed'n,* 476 U.S. at 458). Unless the conspirators imposing the group boycott possess "market power or exclusive access to an element essential to effective competition, the conclusion that expulsion is virtually always likely to have an anti-competitive effect is not warranted." *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.,* 472 U.S. 284, 296 (1985). The Supreme Court's caution against the hasty application of the *per se* doctrine has been pronounced expressly in the context of professional associations. *See Capital Imaging Associates v. Mohawk Valley Med. Associates*, 996 F.2d 537, 543 (3d Cir. 1993).

Defendants contend that Plaintiffs fail to allege that the rare coin grading and authenticating market as a whole suffered an anti-competitive injury, as opposed to the hindering of Plaintiffs' individual ability to compete in the market. Moving Defendants contend that Plaintiffs merely elevate their tort allegations of slander and tortious interference to antitrust claims.

Plaintiffs allege that Defendants ANA and PNG participated in a concerted effort to destroy competition in the coin grading industry by banning Accugrade from trade shows, alienating its

-11-

dealers and customers through a campaign of defamation and bogus coin grading surveys, and effectively painting it as a "counterfeiter" among the coin collectors and dealers. Doc. No. 5 at ¶ 18d, 18g. They also allege that ANA published Barry Stuppler's libelous "advertisement" in the July and August 2004 volumes of "The Numismatist." Doc. No. 5 ¶ 23.[4] Plaintiffs further allege that Collectors Universe ANA, PNG, and Stuppler concocted bogus coin grading surveys in 2002 and 2004 for the purpose of diminishing competition in the industry and actively hindered the development of Plaintiffs' online coin pricing catalogue. Doc. No. 5 ¶ 18f. Plaintiffs allege that Defendants conspired to libel Accugrade, alienate its dealers and customers so that they would stop doing business with it, and to destroy its reputation in the rare coin grading industry. Doc. No. 5 ¶ 17.

None of these allegations contain the type of the traditional economic coercion used to implement a refusal to deal directly with Accugrade by other rare coin graders at the same level or suppliers. Instead, Plaintiffs allegations are that non-competitors and professional grading associations attempted to influence consumers' opinions and turn business away from Accugrade by tarnishing its reputation with its customers. Such allegations do not rise to the level of antitrust activity, but merely allege common law business tort claims.

"The legislators who passed the Sherman Act did not make ordinary business torts federal torts for which treble damages could be recovered. . . . Their concern . . . was with practices that by making markets less competitive hurt the people buying from or selling to the firms in those markets. To injure . . . one or two competitors in a market will not, if there are many competitors in that market, have much effect on consumers or anyone else besides the competitors in question." *Greenberg v.*

---

[4]Plaintiffs also allege that a non-party, rec.collecting.coins a/k/a RCC, an ANA sanctioned coin club and internet users group of coin dealers, "created a legal defense fund to provide an obstacle for Plaintiffs to seek vindication for the defamation and tortious interference carried out by its members." Doc. No. 5 ¶ 11, 18c.

*Mt. Sinai Medical Center*, 629 So.2d 252, 257 (Fla. 3rd DCA 1993). It is not enough for a plaintiff to allege that defendants unlawfully conspired to engage in a per se illegal boycott against him, and he sustained economic injury as a result of that illegal boycott; a plaintiff must allege that defendants' activities have the effect of stifling competition in general. *Id.* Florida "antitrust laws are for the protection of competition, not primarily for the protection of individual competitors." *St. Petersburg Yacht Charters,* 457 So.2d 1028, 1047 (Fla. 2d DCA 1984).

As Defendants contend, Plaintiffs have not identified the relevant market at issue or that the particular market suffered injury. Plaintiffs have not even identified whether the relevant market is limited to Florida or is national. As PNG properly contends, there is simply no mention of PNG's influence in any market that would indicate that it possessed any ability to affect price or output. As Stuppler contends, Plaintiffs have not alleged that it participated in a particular market or that it affected the price or supply of goods in that market.[5] Plaintiffs allege that Accugrade "by mid-2001 obtained approximately one-half of the market share pertaining to major coin trade shows." Doc. No. 6 ¶ 16.

In *ASA Accugrade, Inc. v. American Numismatic Association*, Plaintiffs' allegations of "group boycott" failed to meet the minimum pleading requirements of federal antitrust law. 370 F. Supp.2d 213, 217 (D. D.C. 2005) (Roberts, J.)[6]. As pointed out in that case, Plaintiffs offered no facts to establish that there could be a "boycott" by defendants, "who are not, with one exception, either suppliers or consumers of plaintiff's services and products." *Id.* In that case, Plaintiffs sued three of

---

[5] Absent from Plaintiffs' Second Amended Complaint is any mention of Accugrade's or the individual Defendants' share of the coin grading and authenticating market. In support of its claims in the federal case, Accugrade alleged an 8% national market share in the rare coin grading and authentication market. *ASA Accugrade, Inc. v. American Numismatic Ass'n*, 370 F. Supp.2d 213, 218 (D. D.C. 2005).

[6] The federal district court opinion dismissing Plaintiffs' federal Sherman Act antitrust claims is instructive and persuasive, although not binding on this Court, which is considering dismissal of Plaintiffs' claims under the Florida Antitrust Act. The doctrine of collateral estoppel has not been applied.

-13-

the same Defendants who are named in this case: the American Numismatic Association, the Professional Numismatists Guild, and Heritage Capital Corporation. *Id*. at 216-17 n.4. Judge Roberts found that the facts did not support Plaintiffs' allegation that those three Defendants would enter into an agreement to restrain trade or create a monopoly when they were not even competitors of Plaintiff ASA Accugrade, Inc. *Id*. at 216 n.4. He held: "The complaint offers no reason, and none is obvious, why any of the [defendants] would enter into such an agreement when, presumably, they have nothing to gain from an illegal conspiracy to restrain trade or to create a monopoly, as they are not even competitors of the plaintiff." *Id.* Consistent with this reasoning, Defendants ANA, PNG, and Defendant Stuppler are not competitors of Plaintiff Accugrade, and thus undercut any restraint of trade theory. *See id.* at 217 n.6.

As Judge Roberts found in *ASA Accugrade, Inc. v. American Numismatic Association*, based on facts identical to those alleged in this case:

> The complaint also fails to demonstrate that the objectionable conduct, *i.e.*, the alleged defamation and tortious interference, is even anti-competitive or designed to restrain trade at all. The facts alleged in the complaint support, at most, an inference that several false and defamatory statements regarding plaintiff's personnel, business services and products were either published by a defendant or published on an internet website maintained by a defendant. Indeed, most of the negative statements alleged in the complaint were allegedly authored by non-parties to this action . . . Publishing negative statements about a business is no the sort of conduct that constitutes a *per se* antitrust violation. Such conduct is neither "manifestly anticompetitive," nor would it "almost always tend to restrict competition." . . . Plaintiff offers no fact to establish that there even was a "boycott" by defendants, who are not, with one exception, either suppliers or consumers of plaintiff's services and products.

370 F. Supp.2d at 217. After listing Accugrade's various tort allegations, such as the "bogus study," the setting up of an internet rules committee, and establishing a legal defense fund, Judge Roberts held: "Plaintiff does not explain how any of this conduct produced any injury to plaintiff at all, or how it constitutes anti-competitive conduct aimed at and capable of destroying competition in the market." *Id*. at 217 & n. 6.

-14-

For Plaintiffs' claims in this case brought under the Florida Antitrust Act, Plaintiffs allege that one Defendant maintained a message board where negative statements about Plaintiffs were posted, that a second Defendant caused the publication of negative statements about Plaintiff in an industry magazine published by a third Defendant. Setting aside the allegations of their falsity[7], negative statements or feedback concerning the quality of the work of a coin grader would serve to improve competition, not reduce it, through the natural selection of consumers for higher quality work. It is respectfully recommended that, because the Second Amended Complaint fails to state a claim under the Florida Antitrust Act, Fla. Stat. § 542.18 that these claims against all remaining Defendants (ANA, Collectors, Stuppler, and PNG, and Heritage Capital Corporation) be **DISMISSED**.

### *2. Defamation*

Defendants move to have the defamation or trade slander claims (Count III) against them dismissed, contending Plaintiffs' allegations are vague and ill-defined as to the individual Defendants. ANA also argues that the claims of Plaintiffs Alan and Diane Hager individually are confusingly intertwined with conduct solely actionable, if at all, by Accugrade alone. Plaintiffs did a poor job of responding to the motions seeking dismissal of the state tort claims. *See* Doc. No. 48 at 7-11 responding to motions to dismiss antitrust claims, but not discussing tort claims); Doc. No. 58 at 7 (mentioning tort claims in one paragraph mixed in with lengthy discussion about the antitrust claims).

To establish a cause of action for defamation under the Florida common law, a plaintiff must show that: (1) the defendant published a false statement about the plaintiff; (2) to a third party; and (3) the falsity of the statement caused injury to the plaintiff. *Razner v. Wellington Regional Medical Center, Inc.*, 837 So.2d 437, 442 (Fla. 4th DCA 2003); *Shaw v. R.J. Reynolds,* 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), *aff'd*, 15 F.3d 1097 (11th Cir. 1994). As Defendants point out, a plaintiff must

---

[7]Plaintiffs' recourse for the falsity of the statements is via their claims for defamation and tortious interference with business relationships.

"link a particular remark to a particular defendant," and "specifically identify the persons to whom the allegedly defamatory comments were made," as well as provide a time frame when such statements were made. *See Jackson v. North Broward County Hospital District*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000); *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-58 (S.D. Fla. 1986).

Plaintiffs allege that Defendant Stuppler authored and ANA published a defamatory article about Accugrade which was distributed to recipients of "The Numismatist." Doc. No. 5 ¶ 23. The Second Amended Complaint alleges the "advertisement" was "patently false and damaging" but gives no detail as to the content of the article/advertisement.

Plaintiffs also allege that Collectors Universe, via its message board, published internet websites containing false and disparaging statements about Plaintiffs. Doc. No. 5 ¶ 19o. Once again, however, Plaintiffs fail to allege the content of the allegedly disparaging statements or the authors. Plaintiffs further allege that PNG (along with Collectors Universe, ANA, and Stuppler) "concocted 'bogus' coin grading surveys" in 2002 and 2004 and publicized the illegitimate results of the "surveys." Doc. No. 5 ¶ 18. Plaintiffs once again fail to provide sufficient detail about the "illegitimate" results of the surveys or how those disparaged Plaintiffs.

It is respectfully recommended that, because Plaintiffs' claims for defamation in the Second Amended Complaint are vague, but it appears they may be able to state claims for defamation, that these claims be **DISMISSED** without prejudice with leave to refile more specific claims in a Third Amended Complaint.

### 3. *Tortious interference with advantageous business relationships*

Defendants move for dismissal of Plaintiffs' claims for tortious interference with advantageous business relationships. To plead a claim for tortious interference under Florida law, a plaintiff's complaint must allege facts to establish four elements: (1) the existence of a business relationship; (2)

knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994).

Plaintiffs allege the formation of a conspiracy to defame Plaintiff Accugrade and interfere with its advantageous business relationships with its dealers. Doc. No. 5 ¶ 22, 42. Accugrade has properly pled elements (1), (2), and (4). The issue is whether Accugrade has sufficiently pled Defendants' intentional and unjustified interference with Accugrade's dealers. Accugrade alleges that "Defendants" – without being specific – threatened its dealers as part of the RCC newsgroup and at trade shows. Doc. No. 5 ¶ 22. Although Paragraph 19 of the Second Amended Complaint lists many objectively disparaging comments by non-parties (Ira Stein, Mark Greene, Byron Reed, Bruce Hickmott, Eric Tillery, Reid Goldsborough, and Gregory Rohan), there are no "threatening" statements or statements apparently made to Accugrade customers/dealers. *See* Doc. No. 5 ¶ 19a-m. It is respectfully recommended that, because Accugrade's claim for tortious interference with advantageous business relationship in the Second Amended Complaint is vague as to the "threatening" statements made or any other intentional interference with its dealers, but it appears that Accugrade may be able to state a claim for tortious interference, this claim should be **DISMISSED** without prejudice with leave to refile more a specific claim in a Third Amended Complaint.

### *4. Conspiracy*

Because it is recommended that the Plaintiffs' claims in the underlying torts be dismissed without prejudice with leave to file a Third Amended Complaint, it is also respectfully recommended that Plaintiffs' claims for conspiracy to commit common law defamation and tortious interference be

-17-

**DISMISSED** without prejudice with leave to refile more a specific claim in a Third Amended Complaint.

**DONE** and **ORDERED** in Orlando, Florida on April 19, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record